Appeal Nos. 2023-1398, -1416

IN THE
UNITED STATES COURT OF APPEALS
FOR THE FEDERAL CIRCUIT

**IROBOT CORPORATION**
*Appellant*,

v.

**SHARKNINJA OPERATING LLC, SHARKNINJA MANAGEMENT LLC, SHARKNINJA SALES COMPANY,**
*Cross-Appellants*.

Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board, IPR2021-00544

# REPLY BRIEF OF CROSS-APPELLANTS SHARKNINJA OPERATING LLC, SHARKNINJA MANAGEMENT LLC, SHARKNINJA SALES COMPANY

Daniel C. Tucker
Michael V. Young
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
(571) 203-2700

Erika H. Arner
Luke McCammon
FINNEGAN, HENDERSON, FARABOW,
GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC 20001-4413
(202) 408-4000

October 4, 2023

*Counsel for Cross-Appellants*

# CERTIFICATE OF INTEREST

**Case Number** 23-1398, 23-1416

**Short Case Caption** iRobot Corporation v. SharkNinja Operating LLC

**Filing Party/Entity** SharkNinja Operating LLC, SharkNinja Management LLC, SharkNinja Sales Company

**Instructions:**

1. Complete each section of the form and select none or N/A if appropriate.
2. Please enter only one item per box; attach additional pages as needed, and check the box to indicate such pages are attached.
3. In answering Sections 2 and 3, be specific as to which represented entities the answers apply; lack of specificity may result in non-compliance.
4. Please do not duplicate entries within Section 5.
5. Counsel must file an amended Certificate of Interest within seven days after any information on this form changes. Fed. Cir. R. 47.4(c).

I certify the following information and any attached sheets are accurate and complete to the best of my knowledge.

Date: October 4, 2023 Signature: /s/ Daniel C. Tucker

Name: Daniel C. Tucker

| **1. Represented Entities.** Fed. Cir. R. 47.4(a)(1). | **2. Real Party in Interest.** Fed. Cir. R. 47.4(a)(2). | **3. Parent Corporations and Stockholders.** Fed. Cir. R. 47.4(a)(3). |
|---|---|---|
| Provide the full names of all entities represented by undersigned counsel in this case. | Provide the full names of all real parties in interest for the entities. Do not list the real parties if they are the same as the entities. | Provide the full names of all parent corporations for the entities and all publicly held companies that own 10% or more stock in the entities. |
| ☐ None/Not Applicable | ☐ None/Not Applicable | ☐ None/Not Applicable |
| SharkNinja Operating LLC | SharkNinja, Inc. | SharkNinja Midco LLC |
| SharkNinja Management LLC | SharkNinja, Inc. | SharkNinja Operating LLC |
| SharkNinja Sales Company | SharkNinja, Inc. | SharkNinja Operating LLC |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

☐ Additional pages attached

**4. Legal Representatives.** List all law firms, partners, and associates that (a) appeared for the entities in the originating court or agency or (b) are expected to appear in this court for the entities. Do not include those who have already entered an appearance in this court. Fed. Cir. R. 47.4(a)(4).

☐ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| Abhay A. Watwe | Trenton Ward | Jency J. Mathew |
| Doris Johnson Hines | Kai Rajan | Brady Nash |
| Jia W. Lu | Brian A. Rosenthal<br>Gibson, Dunn & Crutcher LLP | |

**5. Related Cases.** Other than the originating case(s) for this case, are there related or prior cases that meet the criteria under Fed. Cir. R. 47.5(a)?

☒ Yes (file separate notice; see below) ☐ No ☐ N/A (amicus/movant)

If yes, concurrently file a separate Notice of Related Case Information that complies with Fed. Cir. R. 47.5(b). **Please do not duplicate information.** This separate Notice must only be filed with the first Certificate of Interest or, subsequently, if information changes during the pendency of the appeal. Fed. Cir. R. 47.5(b).

**6. Organizational Victims and Bankruptcy Cases.** Provide any information required under Fed. R. App. P. 26.1(b) (organizational victims in criminal cases) and 26.1(c) (bankruptcy case debtors and trustees). Fed. Cir. R. 47.4(a)(6).

☒ None/Not Applicable ☐ Additional pages attached

| | | |
|---|---|---|
| | | |

# TABLE OF CONTENTS


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 1

A. For the First Grounds, the Board Erred by Narrowly Construing "Avoiding . . . the Right Signal and the Left Signal" .......... 1

1. The Board's Construction Is Wrong .......... 2

2. Reversal Is Appropriate Under the Correct Construction .......... 8

B. For the Second Grounds, the Board Erred in Determining that Jeon and Jones Do Not Render Obvious Claim 9 .......... 8

III. CONCLUSION .......... 12

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Lee*,
277 F.3d 1338 (Fed. Cir. 2002) ....................11

## Other Authorities

Patent Trial and Appeal Board, Consolidated Trial Practice Guide
(Nov. 2019) ....................6

# I. INTRODUCTION

The Board erred in holding that SharkNinja had not proven claim 9 to be obvious under either the first or second prior art grounds.[1] For the first grounds, the Board's decision rested on an overly narrow construction of "avoiding . . . the right signal and the left signal." Once that construction error is remedied, the Board's finding of nonobviousness should be reversed. For the second grounds, the Board dismissed SharkNinja's obviousness case out of hand and failed to consider SharkNinja's evidence. Thus, if the Court does not reverse based on the first grounds, it should vacate and remand based on the second grounds.

# II. ARGUMENT

## A. For the First Grounds, the Board Erred by Narrowly Construing "Avoiding . . . the Right Signal and the Left Signal"

Despite iRobot's protestations, this is a dispute about claim construction. iRobot contends that "the Board did not conduct a formal construction of the term 'avoid' . . . ." Yellow Br. at 35. But the parties are undoubtedly disputing the Board's interpretation of "avoiding," applying the tools of claim construction. For example, iRobot argues that "[t]he Board correctly construed 'avoiding' according to its plain and ordinary meaning in the context of the specification." Yellow Br. at 39. And

[1] The first grounds rely on the teachings of Jeon for the relevant limitation of claim 9, and do not involve Jones. The second grounds rely on a combination of Jeon and Jones to render obvious the relevant limitations of claim 9.

iRobot's statement of the issues identifies this as a claim construction dispute. Yellow Br. at 30. The Court should therefore review the Board's construction de novo.

### 1. The Board's Construction Is Wrong

The Board's construction of "avoiding . . . the right signal and the left signal" to require "more than not attempting to detect the signals," and particularly "moving away from the base station or altering its course to avoid the base station," Appx53, is untethered to the plain meaning, unsupported by the specification, and contradicts iRobot's admission in the ITC. iRobot's response brief attempts to backfill the Board's analysis but only underscores its impropriety.

***Plain Meaning.*** iRobot declares that "avoiding" the signals has a "well-known" plain meaning requiring something (iRobot does not say exactly what) more than not attempting to detect those signals. Yellow Br. at 36-37. iRobot's plain-meaning argument relies on an example of a person walking down a hallway, Yellow Br. at 36-37, but the example demonstrates the Board's error. If a person walking down a hallway looks up to make eye contact with a passerby, he is like Jeon's rotation of sensors 304, 305 on plate 306 in charge mode, which the Board concluded (and iRobot does not dispute) discloses "detecting" the two signals in the context of independent claim 1. *See* Appx37-38. But if that person does not raise his eyes and continues to look down, he is "avoiding" eye contact with that passerby. This is the

same as Jeon's robot not rotating its plate 306 to "avoid[] . . . the right signal and the left signal" when it is not in "charge mode." *See* Red Br. at 24-25 (mapping Jeon to claim 9). Simply put, if spinning sensors to align with base station signals undisputedly constitutes "detecting" those signals, then not spinning those sensors to not align with base station signals constitutes "avoiding" them.

iRobot's dictionary definitions support SharkNinja's understanding. iRobot alleges that three dictionaries show the plain meaning of "avoid" is "to keep away from." Yellow Br. 41. But all three dictionaries also support a broader understanding of "avoid" as "to prevent from happening." Appx7170 ("to prevent from happening"); *see also* Appx7173 ("not do or prevent"); Appx7176 ("prevent from happening"). This is precisely what Jeon does in charge mode—it prevents the rotation of the sensors and thereby prevents detection of (i.e., avoids) the signals.

iRobot also does not grapple with how the second part of the Board's construction—that this limitation requires "moving away from the *base station* or altering its course to *avoid the base station*"—contradicts the plain meaning. Claim 9 requires "avoiding . . . the right *signal* and the left *signal*." The Board's construction improperly replaces "signal" with "base station," in defiance of the limitation's plain meaning.

***The '423 Specification.*** The '423 patent's embodiments do not support the Board's narrow construction. iRobot quibbles about whether the case law requires

"explicit" lexicography or disavowal (SharkNinja never argued it must be "explicit"), Yellow Br. at 38, but this is beside the point. The '423 patent does not define "avoiding" as narrowly as the Board construed it—either explicitly or implicitly. Nor does it provide *any* support or suggestion for such a narrow construction.

Indeed, iRobot's attempt to backfill the Board's analysis of the '423 patent's embodiments, including by citing portions of the '423 patent that the Board did not, further undermine the Board's construction. Yellow Br. at 39-42. Specifically, to counter SharkNinja's argument that the '423 patent does not disclose avoiding the claimed signals (it does not), *see* Red Br. at 72, iRobot argues that Figure 3 discloses avoiding an "avoidance signal 60," by moving "away from the avoidance signal." Yellow Br. at 39-41 (citations omitted). But iRobot overlooks that the avoidance signal 60 is ***not*** the claimed right and left signals. The claimed right and left signals are detected in claim 1 and used to dock the robot. Appx86 at 19:38-46. Those same signals are then "avoid[ed]" in claim 9. Appx86 at 20:20-22. But the right and left signals are different signals than the avoidance signal 60 disclosed in the specification.

For example, as even iRobot contends in its principal brief, the '423 patent discloses detecting the right and left signals 62 and 64 as shown in Figure 4A when docking. Appx83-84 at 14:46-15:12; Blue Br. at 11-12. It refers to these signals as

"homing signals 62, 64" which are different from the "avoidance signal 60" disclosed in Figure 3. Appx82 at 12:37-39.

| **Signals 62 (red) and 64 (green)** | **Avoidance signal 60 (blue)** |
|---|---|
|   FIG. 4A |   FIG. 3 |

Appx68-69 at Figs. 3, 4A (annotated).

The citations iRobot provides to support its argument uniformly point to this different—and unclaimed—avoidance signal. Yellow Br. at 39-41 (citing Appx77 at 2:55-57 ("base station avoidance signal"); Appx78 at 3:65-4:3 ("avoidance signal"); Appx 79 at 5:12-16 ("avoidance signal"), Appx79 at 6:17-22 (describing the "avoidance signal" of Fig. 3), Appx82 at 11:62-12:21 ("avoidance signal 60"), Appx 82 at 12:43-63 ("avoidance signal 60")). None of the citations disclose avoiding the right and left signals, as claimed. Thus, iRobot is attempting to backfill the Board's analysis by relying on unclaimed embodiments. Nothing in iRobot's discussion of these embodiments undermines SharkNinja's arguments that the '423

patent does not describe—let alone limit—what it means to avoid the right and left signals.

***iRobot's ITC Admission.*** Finally, iRobot cannot explain away the Board's failure to consider iRobot's admission during the ITC proceeding that "avoiding" the signals includes simply "ignor[ing]" them. Appx4031; *see* Red Br. at 71. In its brief, iRobot concedes that this statement was part of an interrogatory response where iRobot was arguing that its products practice claim 9's "avoiding" step by "ignoring the docking beacons" "when the Roomba's battery level is above a certain threshold." Yellow Br. at 42 (quoting Appx4031).

iRobot's admission is thus highly relevant to the meaning of "avoiding." iRobot contends otherwise because this statement was not within the "four corners" of the patent. Yellow Br. at 42-43. But the Board's own Trial Practice Guide states that it "*will* consider statements regarding claim construction made by patent owners and by a petitioner filed in other proceedings." Patent Trial and Appeal Board, Consolidated Trial Practice Guide at 48 (Nov. 2019), available at: https://www.uspto.gov/sites/default/files/documents/tpgnov.pdf (emphasis added). The Board should have considered iRobot's ITC positions.

iRobot also incorrectly argues that this contention cannot support SharkNinja's construction because it "refers to the action of ignoring signals that had been detected." Yellow Br. at 42. That is not true: iRobot's own statement

explains that "the robot ignores the docking beacons" first, when the "battery level is above a certain threshold." Yellow Br. at 42 (quoting Appx4031). iRobot further explained that the robot does not "begin[] to actively search for the docking beacons" until after "the battery falls below a certain threshold." Yellow Br. at 42 (quoting Appx4031). Thus, the signals are ignored first and detected second.

Nothing in the record supports the Board's overly narrow interpretation that "ignor[ing]" the signals requires "more than not attempting to detect the signals," and to require "moving away from the base station or altering its course to avoid the base station." Appx53. This is particularly true in light of the Board's unappealed and inconsistent finding that Jeon's rotation of sensors 304, 305 on plate 306 discloses "detecting" the two signals in the context of claim 1. Appx37-38. That finding cannot be squared with the Board's inconsistent holding that Jeon's opposite behavior (not rotating the sensors) does not disclose "avoiding" them within the context of claim 9.

iRobot argues it is "undisputed" that Jeon does not disclose "detecting signals and avoiding them" and that Jeon instead "does nothing." Yellow Br. at 37 (citing Appx7218-7219 at 42:21-43:3; Appx7234-7235 at 58:21-59:21; Appx6686-6687, ¶ 129). But iRobot ignores SharkNinja's expert's other testimony that claim 9's "avoiding" does not require detecting and then turning away from a signal; it instead encompasses ignoring the signal entirely. Appx7368 at 192:6-19; Appx7369-7370

at 193:15-194:8. Jeon teaches precisely this. As the Board correctly found, Jeon discloses "detecting" the two signals in the context of claim 1 by rotating its sensors 304, 305. Appx37-38. And Jeon discloses "avoiding" those two signal in the context of claim 9 by not rotating those same sensors. *See* Red Br. at 24-25. The Board's contrary conclusion should be reversed.

#### 2. Reversal Is Appropriate Under the Correct Construction

iRobot's only argument against reversal under the correct construction is that under this construction "iRobot had conceived of the claim long before the prior art." Yellow Br. at 44. But as SharkNinja showed in its principal brief, iRobot has failed to demonstrate that it conceived of claim 1, from which claim 9 depends. Red Br. at 32-53. Because iRobot did not show prior conception of claim 1, it cannot show prior conception of dependent claim 9. Reversal is therefore appropriate.

### B. For the Second Grounds, the Board Erred in Determining that Jeon and Jones Do Not Render Obvious Claim 9

iRobot alleges that the Board's decision "that Jones fails to teach" the limitation of claim 9 "rests firmly on substantial evidence." Yellow Br. at 44-45. iRobot makes the same error as the Board because SharkNinja never argued that Jones alone discloses this limitation. Instead, for the second grounds, SharkNinja relied on the combined teachings of Jones and Jeon and the knowledge of one skilled in the art. Appx143-146; Appx2241-2245 ¶¶155-162. And SharkNinja argued in its

principal brief that that the Board failed to properly consider SharkNinja's obviousness analysis and evidence. Red Br. at 73-76.

iRobot faults Jones for teaching avoiding obstacles instead of signals from a base station. Yellow Br. at 44-45. But SharkNinja and its expert recognized that Jones avoids IR signals that have reflected off *obstacles*, and it then proposed to combine that teaching with Jeon's teaching of controlling a robot based on detected IR signals emitted from a *base station*. Appx144-146; Appx2241-2245 ¶¶ 155-162; *see* Red Br. at 25-28 (summarizing petition). SharkNinja explained that a skilled artisan would have combined the two references so that if Jeon's robot detected the signals generated by the base station when its battery was sufficiently charged, it would implement Jones's Avoid behavior to turn until its sensors 304, 305 no longer detected the rays. Appx2243-2244 ¶¶ 159-160; Appx145. This would prevent the robot from traveling to the base station unnecessarily, which would conserve battery capacity, save time, and avoid accidental collisions with the base station. Appx2243-2245 ¶¶ 159-161; Appx145-146.

iRobot alleges that two[2] of these reasons—conserving battery capacity and saving time—are "generic" and do not "explain how or why a skilled artisan" would modify Jones's teachings. Yellow Br. at 45-46. It contends that SharkNinja's

---

[2] iRobot does not address the third reason—avoiding accidental collisions with the base station. *See* Yellow Br. at 46.

obviousness analysis was limited to two sentences, and that SharkNinja's expert provided "little more than th[ose] two sentences." Yellow Br. at 46-47. This criticism is incorrect and unwarranted.

Contrary to iRobot's assertions, SharkNinja's expert laid out a clear obviousness case for claim 9, including explaining how:

- Jones's Avoid behavior implements a turning maneuver in response to detecting an IR reflection from an obstacle. Appx2241-2242 ¶¶ 155-158.
- Jeon's robot moves toward the base station when it senses the IR signals from the base station. Appx2243 ¶ 159.
- One skilled in the art would have found it obvious to modify Jeon to not approach the base station if the battery was sufficiently charged, to prevent unnecessary travel and reduce cleaning time. Appx2243 ¶ 159.
- One skilled in the art would have incorporated Jones's Avoid behavior into Jeon's robot to avoid the base station, and one skilled in the art would have understood that Jones's Avoid behavior would have functioned in the same way in response to detecting IR emitted from the base station as it did when detecting IR reflections from obstacles. Appx2243-2244 ¶¶ 159-160.
- Implementing Jones's Avoid behavior on Jeon's robot would have been "a simple combination of familiar elements (Avoid behavior of Jones) according to known methods (turning left or right until no IR signal is

> received) to achieve a predictable and desired result (preventing movement of the robot towards the base station to conserve energy, save time, and avoid accidental collision with the base station).” Appx2244 ¶ 161.

It is unclear what more iRobot believes is required. Regardless, the Board erred in not considering this evidence, as SharkNinja explained in its principal brief. Red Br. at 75-76. iRobot alleges that the Board’s single sentence dismissal of SharkNinja’s obviousness case is acceptable because of “the Board’s extensive discussion of Jones and Jeon,” Yellow Br. at 47 (citing Appx21, Appx53-54), but the Board’s overviews of these prior art references in isolation do not demonstrate that the Board considered SharkNinja’s reasons for combining them. The Board was required to consider this evidence and articulate its reasoning, but it failed to do so. “Omission of a relevant factor required by precedent is both legal error and arbitrary agency action.” *In re Lee*, 277 F.3d 1338, 1344 (Fed. Cir. 2002)). The Court should at least remand for the Board to show its work.

## III. CONCLUSION

For the reasons set forth in its principal brief and explained in further detail herein, SharkNinja requests that this Court reverse or vacate the Board's determination that claim 9 was not shown to be unpatentable.

Date: October 4, 2023

Respectfully submitted,

/s/ Daniel C. Tucker
Erika H. Arner
Luke McCammon
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
901 New York Ave., N.W.
Washington, D.C. 20001-4413
(202) 408-4000

Daniel C. Tucker
Michael V. Young
FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, LLP
1875 Explorer Street, Suite 800
Reston, VA 20190
(571) 203-2700

*Attorneys for Cross-Appellants*

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATIONS

**Case Number:** 2023-1398, -1416

**Short Case Caption:** iRobot Corporation v. SharkNinja Operating LLC

**Instructions:** When computing a word, line, or page count, you may exclude any items listed as exempted under Fed. R. App. P. 5(c), Fed. R. App. P. 21(d), Fed. R. App. P. 27(d)(2), Fed. R. App. P. 32(f), or Fed. Cir. R. 32(b)(2).

The foregoing filing complies with the relevant type-volume limitation of the Federal Rules of Appellate Procedure and Federal Circuit Rules because it meets one of the following:

- [x] the filing has been prepared using a proportionally-spaced typeface and includes 2,467 words.
- [ ] the filing has been prepared using a monospaced typeface and includes ________ lines of text.
- [ ] the filing contains ________ pages / ________ words / ________ lines of text, which does not exceed the maximum authorized by this court's order (ECF No. ________).

Date: 10/04/2023

Signature: /s/Daniel C. Tucker

Name: Daniel C. Tucker